The STATE of Ohio, Appellee,

v.

CROSBY, Appellant.

[Cite as *State v. Crosby*, 186 Ohio App.3d 453, 2010-Ohio-1584.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 92807.

Decided April 8, 2010.

454

William D. Mason, Cuyahoga County Prosecuting Attorney, and Ryan Bokoch and Aaron Brockler, Assistant Prosecuting Attorneys, for appellee.

Kelly A. Gallagher, for appellant.

---

JAMES J. SWEENEY, Judge.

{¶ 1} Defendant-appellant, Charles Crosby, appeals his attempted-murder and felonious-assault convictions. After reviewing the facts of the case and pertinent law, we affirm his convictions and remand for resentencing.

{¶ 2} On March 16, 2008, defendant and Clifton Fields, the victim, who had been good friends for the past 12 to 13 years, were at a party when the victim gave the defendant money to pick up a package of cocaine. The two had planned on meeting at 1:00 a.m. on March 17, 2008, at the house of their friend, Little Man, located at 13900 Shaw Avenue in East Cleveland. The victim was later dropped off at a nearby store, and he began walking down East 139th Street toward Little Man's house. As he neared an abandoned house, a man jumped out of the bushes. This man shot the victim in the side. The victim fell to the ground, and the man stood over him, shot him three more times, and then ran toward Little Man's house, where defendant's gray Jeep was parked.

{¶ 3} The victim was taken to the hospital, where he was treated for gunshot wounds. He remained in a coma for 34 days, has had several surgeries, and will require additional surgeries, as two bullets are still lodged in his body. After coming out of the coma, the victim identified the defendant as the man who shot him.

{¶ 4} On September 30, 2008, the defendant was indicted for attempted murder in violation of R.C. 2903.02(A) and 2923.02; two counts of felonious assault in violation of R.C. 2903.11(A)(1) and (A)(2), respectively; and having a weapon while under disability in violation of R.C. 2923.13(A)(3). The first three counts included firearm specifications in violation of R.C. 2941.141 and 2941.145.

{¶ 5} On January 30, 2009, a jury found defendant guilty of attempted murder and two counts of felonious assault, along with the firearm specifications. On February 5, 2009, the court found defendant guilty of having a weapon while under disability. Defendant was sentenced to ten years in prison for attempted murder; eight years for each count of felonious assault, to run concurrently with the ten years; three years for having a weapon while under disability, to run concurrently with the ten years; three years for all firearm specifications, to run consecutively to the ten years; and two years on an associated probation violation, to run consecutively to the 13 years. Defendant's aggregate sentence is 15 years in prison.

■ {¶ 6} Defendant now appeals, raising six assignments of error for our review.

{¶ 7} "I. The trial court erred by allowing the State to introduce other acts evidence in violation of the appellant's due process rights."

{¶ 8} Specifically, defendant argues that the court erred when it allowed testimony that defendant was known to carry a 9 mm handgun, which was the caliber weapon used to shoot the victim.

{¶ 9} Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See also R.C. 2945.59.

{¶ 10} In *State v. Watson* (1971), 28 Ohio St.2d 15, 57 O.O.2d 95, 275 N.E.2d 153, the Ohio Supreme Court reviewed the admissibility of other-acts evidence involving a defendant's being seen with a gun. The court stated that the " 'general rule of exclusion does not apply where the evidence of another crime is relevant and tends directly * * * to prove * * * [the] accused's guilt of the crime charged, or to connect him with it, or to prove some particular element or material fact in such crime; and evidence of other offenses may be received if relevant for any purpose other than to show mere propensity or disposition on [an] accused's part to commit the crime.' " Id. at 21, 57 O.O.2d 95, 275 N.E.2d 153, quoting 22A Corpus Juris Secundum (1962) Criminal Law, Section 683.

{¶ 11} "Stated another way, the rule is that 'except when it shows merely criminal disposition, * * * evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged.' " Id. at 21, 57 O.O.2d 95, 275 N.E.2d 153, quoting *People v. Peete* (1946), 28 Cal.2d 306, 314, 169 P.2d 924.

{¶ 12} In *Watson*, the court concluded that other-acts evidence was admissible when it showed that the defendant had possession of the murder weapon used in the crime charged. One witness testified that three weeks before the murder in question, the defendant stole the witness's gun. It was established that this gun, which was found at the defendant's feet at the time of his arrest, was the murder weapon. Additionally, a second witness testified that two days before the murder, the defendant had attempted to rob him with a gun. The witness identified this gun, and it was shown to be the weapon used in the subsequent murder. Id. at 19, 57 O.O.2d 95, 275 N.E.2d 153.

{¶ 13} Other Ohio cases have allowed evidence into trial that shows a connection between the murder weapon and the defendant. See, e.g., *State v. Laws* (Nov. 20, 1980), Franklin App. No. 72AP–398, 1980 WL 353796. Additionally, this

court has allowed into evidence testimony that the defendant was seen with a gun—not necessarily the gun involved in the offense—based on temporal and spacial proximity to the crime in question. *State v. Davis* (Jan. 6, 1977), Cuyahoga App. No. 35421, 1977 WL 201136. In *Davis,* a witness testified that the defendant had been a couple of houses down from the scene of the shooting, immediately after the incident, "waving the gun" and "shouting." Id. Another witness testified that the defendant had returned to the scene of the shooting approximately 15 minutes after the incident and had waved a pistol in the air. Id.

{¶ 14} In the instant case, however, the testimony about defendant's being seen with a gun bears no such relationship to the offenses that he was convicted of. Four witnesses testified that defendant was known to carry a gun. The first witness testified that he knew defendant to carry a 9 mm gun; however, he had not seen defendant for two years prior to the night of the offense, and he did not see defendant with a gun on the date in question.

{¶ 15} The victim and another witness testified that they knew defendant to carry a 9 mm gun; however, no mention was made of any time-frame or specific incidents when defendant was seen with a gun. The fourth witness testified that he has known defendant to carry a gun, but not a 9 mm. Other than the victim's testimony that defendant shot him, nobody testified that they saw defendant with a gun on or near the date of the offense.

{¶ 16} Furthermore, the weapon was not recovered in the instant case. Thus, the other-acts evidence does not link defendant to the gun used to shoot the victim, and was therefore improperly admitted. See *State v. Carusone,* Hamilton App. No. C–010681, 2003-Ohio-1018, 2003 WL 832061, at ¶ 30 (holding that other-acts evidence was improperly admitted because it used "solely for the purpose of portraying Carusone as a violent individual who regularly carried guns and fired them at others, and to show that he acted in conformity with his violent character on the night [the victim] was shot").

{¶ 17} Assuming it was error to allow the other acts testimony in the instant case, we nonetheless find that it was harmless under Crim.R. 52(A) because it did not affect defendant's substantial rights. "The defendant has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error. Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." *State v. Cooper,* Cuyahoga App. No. 86437, 2006-Ohio-817, 2006 WL 439906, at ¶ 19.

{¶ 18} Because we find, later in this opinion, that there was credible evidence to support defendant's convictions, we cannot say that this improper testimony

contributed to the jury's finding him guilty. Accordingly, his first assignment of error is overruled.

█ {¶ 19} "II. The trial court erred by allowing the State to impeach [its] own witness with prior unsworn testimony."

█ {¶ 20} Evid.R. 607(A) states that "the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage." Additionally, under Evid.R. 611(C), leading questions are not permitted during direct examination, subject to the following exceptions: "as may be necessary to develop the witness' testimony * * * [and] [w]hen a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." Whether to allow witness impeachment and leading questions is a decision within the sound discretion of the trial court. *State v. Diehl* (1981), 67 Ohio St.2d 389, 21 O.O.3d 244, 423 N.E.2d 1112.

{¶ 21} In the instant case, the state called as a witness Ishman Crumbley, who is a friend of defendant and was with defendant at the party on the night of March 16, 2008. Crumbley testified that defendant called him the following morning to tell him that the victim had been shot the night before. The state asked Crumbley how defendant sounded when telling him this. Crumbley testified as follows: "He just sounded like hisself. He really didn't have no strain or nothing in his voice. Just calm, like regular talk."

{¶ 22} The state requested to treat Crumbley as a hostile witness and ask him leading questions based on Crumbley's prior statement to the prosecutor that defendant was "extremely paranoid and nervous" during the phone call. The court ruled in favor of the state, allowing "a little bit of latitude" as to leading questions, noting that the witness "doesn't seem like the brightest light bulb here. And [the state] might want to maybe ask him a different way. Because maybe he didn't understand the question. So maybe [the state] could rephrase it." After the ruling, Crumbley testified as follows:

{¶ 23} "Q. Did [defendant] seem nervous to you when he talked to you on the phone the next morning about the shooting?

{¶ 24} "A. No.

{¶ 25} "Q. Mr. Crumbley, do you recall earlier this afternoon having a conversation with [me] * * *?

{¶ 26} " * * *

{¶ 27} "A. Yeah, I remember talking to you all earlier.

{¶ 28} "Q. And do you recall when I asked you — in that conversation I asked you that same question, 'What did [defendant] seem like when he told you that [victim] had been shot?' Didn't I ask you that question?

{¶ 29} "A. Yeah. But, like I told you, he didn't seem like he had no remorse. He just basically — like I told you, he talked to us like he was talking, like I said.

{¶ 30} "Q. Mr. Crumbley, when I asked you that question * * * earlier today, did you not say to me that * * * he seemed paranoid and nervous? Remember?

{¶ 31} "A. Yeah.

{¶ 32} "Q. Okay. Can you tell the jury — can you answer the question now? When he told you that [the victim] had been shot that next morning, * * * how did he sound?

{¶ 33} "A. Like, paranoid."

{¶ 34} To establish surprise under Evid.R. 607(A), the state must show that "the testimony is materially inconsistent with the prior written or oral statements and counsel did not have reason to believe that the witness would recant when called to testify." *State v. Holmes* (1987), 30 Ohio St.3d 20, 23, 30 OBR 27, 506 N.E.2d 204. To show affirmative damage under Evid.R. 607(A), the inconsistent testimony must "contradict, deny, or harm that party's trial position." *State v. Stearns* (1982), 7 Ohio App.3d 11, 15, 7 OBR 12, 454 N.E.2d 139.

{¶ 35} Turning to leading questions on direct examination, the 1980 Staff Notes to Evid.R. 611(C) state that in addition to allowing leading questions when a witness is being hostile, they may be asked based on "surprise, refreshing recollection after memory is exhausted, the handicaps of age, illness, or limited intellect, and preliminary matters."

{¶ 36} In *State v. Smith* (1997), 80 Ohio St.3d 89, 110–111, 684 N.E.2d 668, the Ohio Supreme Court addressed an issue almost identical to the one at bar. In allowing the state to ask leading questions of its own witness, *Smith* held that the trial court "exercises reasonable control over the mode of interrogation so that its presentation will effectively ascertain the truth. Evid.R. 611(A). In a side-bar conference, the court explained that it was exercising latitude to get at the truth in the examination of [the witness] because he appeared to be nervous and 'a little slow' and 'straining' with his answers."

{¶ 37} Accordingly, we find that the court did not abuse its discretion in the instant case when it allowed the state to ask leading questions and impeach its witness with a prior inconsistent statement. Defendant's second assignment of error is overruled.

{¶ 38} "III. Appellant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitu-

tion and Article One, Section Ten, of the Ohio Constitution when counsel failed to offer expert testimony on eyewitness identification."

{¶ 39} To substantiate a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) the performance of defense counsel was seriously flawed and deficient and (2) the result of the defendant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Brooks* (1986), 25 Ohio St.3d 144, 25 OBR 190, 495 N.E.2d 407. In *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if a defendant fails to prove the second prong of prejudicial effect. "The object of an ineffectiveness claim is not to grade counsel's performance." Id. at 143, 538 N.E.2d 373.

{¶ 40} The Ohio Supreme Court has held that "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Nicholas* (1993), 66 Ohio St.3d 431, 436, 613 N.E.2d 225. Furthermore, in *State v. Day* (Feb. 21, 2002), Cuyahoga App. No. 79368, 2002 WL 253862, this court held that failure to call "an expert in eyewitness identification was well within the standard of reasonable trial tactics" and did not amount to ineffective assistance of counsel. "This was not a situation in which the eyewitness was unfamiliar with the offender. Rather, the evidence established [that the witness] knew each of the men * * * and * * * saw appellant fire the weapon."

{¶ 41} In the instant case, the victim testified that he and defendant had been friends for 12 or 13 years and that defendant was the person who shot him. Therefore, mistaken identity is not at issue, and the accuracy of eyewitness identification is irrelevant. In fact, it may have served to confuse the jury. See *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, at ¶ 51 ("Ohio favors the admission of expert evidence so long as it is relevant and reliable and will assist the trier of fact"); *Renfro v. Black* (1990), 52 Ohio St.3d 27, 31, 556 N.E.2d 150 (the "issue of whether testimony or evidence is relevant or irrelevant, confusing or misleading, is best decided by the trial judge, who is in a significantly better position to analyze the impact of the evidence on the jury").

{¶ 42} We find that defendant fails both prongs of the *Strickland* test. Counsel's decision to not call an expert on eyewitness identification was not flawed or deficient, as the testimony may not have been admissible. Additionally, defendant did not show that he would have been found not guilty had an expert witness been called to testify. Defendant's third assignment of error is overruled.

{¶ 43} Defendant's final three assignments of error will be addressed together:

{¶ 44} "IV. The appellant's conviction for attempted murder was against the manifest weight of the evidence.

{¶ 45} "V. The appellant's conviction for felonious assault in Count 2 was against the manifest weight of the evidence.

{¶ 46} "VI. The appellant's conviction for felonious assault in Count 3 was against the manifest weight of the evidence."

{¶ 47} The proper test for an appellate court reviewing a manifest-weight-of-the-evidence claim is as follows:

{¶ 48} "[T]he appellate court sits as the 'thirteenth juror' and, * * * reviewing the entire record, weighs * * * all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. Determinations of witness credibility are primarily left to the trier of facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

{¶ 49} Defendant was convicted of attempted murder in violation of R.C. 2903.02(A), which states, "No person shall purposely cause the death of another * * *," and R.C. 2923.02(A), which states, "No person, purposely or knowingly * * * shall engage in conduct that, if successful, would constitute or result in the offense." Defendant was also convicted of felonious assault in violation of R.C. 2903.11(A)(1), which states, "No person shall knowingly * * * [c]ause serious physical harm to another * * *" and R.C. 2903.11(A)(2), which states, "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *."

{¶ 50} East Cleveland Detective Kyle Cunningham testified that defendant made the following statement about the victim's being shot:

{¶ 51} Defendant and victim had "agreed to meet later that evening on 139th and Shaw. [Defendant] told me that when he got there, nobody was there so he * * * [sat] in the car at 13900 Shaw Avenue, which is the gentleman who we know as Little Man, * * * parked in the driveway." Defendant stated that he waited for the victim for 30 minutes, and then he heard sirens coming from a police vehicle or an ambulance. Defendant pulled out of the driveway, parked his car on the next street, and walked back to Shaw. This took two to three minutes. When he returned to Little Man's driveway, he saw that the victim had been shot and that the police had arrived at the scene. Detective Cunningham asked

defendant if at any time during his 30–minute wait, he heard gunshots. Defendant stated that no, he had not heard any shots. Detective Cunningham testified that the distance between Little Man's driveway and where the victim's body was found after he had been shot is about 30 yards. He further testified that it was "very odd" that defendant was able to hear sirens but not gunshots, and "[i]f the person was sitting in the driveway, they would have definitely saw [the victim] get shot."

{¶ 52} The victim testified that he was a long-time friend of defendant, and it was defendant who jumped out of the bushes and shot him on the night in question. "As soon as I turned around and I looked at him, he put one — he shot me in my side. * * * After he shot me, I tried to run. I was calling out for help. And I fell. Once I fell, I just watched him put three more in me. He shot me three more times and he ran off." The victim further testified that the first shot was fired at point-blank range, and he looked at defendant, who was "like a brother" to him, right in the eyes. The victim also testified that after the shooting, defendant ran to Little Man's house, where defendant's gray Jeep was parked. Isaac Jones, who is Little Man's father and lives at 13900 Shaw Avenue, testified that he was home on the night in question, when he heard gunshots. He looked out his window, and there was a gray Jeep in his driveway. Jones testified, "It puzzled me. I was wondering who was in my driveway." By the time Jones looked out his window a second time, the vehicle was gone.

{¶ 53} Defendant argues that the victim's identification of defendant as the shooter is unreliable because the victim drank alcohol and smoked marijuana on the night of the incident and was in a coma for 34 days after the shooting.

{¶ 54} A review of the record shows that the victim drank alcohol on the night he was shot, but the victim testified that he was not drunk at the time of the shooting. The victim also testified that he smokes marijuana on a daily basis. It is undisputed that the victim did not identify defendant until after the victim came out of the coma he was in for 34 days as a result of the shooting.

{¶ 55} However, it is well-settled Ohio law that it is within the jury's province to believe the victim's testimony. See State v. Fayne, Cuyahoga App. No. 83267, 2004-Ohio-4625, 2004 WL 1944793, at ¶ 41 (a jury was free to believe a witness's testimony, "despite his admitted membership in the Crumb Boys gang" and his reputation as a "known criminal"); State v. Page, Cuyahoga App. No. 92719, 2010-Ohio-436, 2010 WL 457274, at ¶ 28 (an appellate court "cannot possibly review a cold transcript and see what the jurors saw or hear what the jurors heard; therefore, we grant substantial deference to the jury's assessment of witness credibility").

{¶ 56} Accordingly, defendant's fourth, fifth, and sixth assignments of error are overruled.

464

{¶ 57} Defendant's convictions are affirmed; however, we remand this case to the trial court for resentencing in light of *State v. Williams,* 124 Ohio St.3d 381, 922 N.E.2d 937, 2010-Ohio-147. In *Williams,* the Ohio Supreme Court held that felonious assault as defined in R.C. 2903.11(A)(2) is an allied offense of attempted murder as defined in R.C. 2903.02(A) and 2923.02. As a result, defendant "may be found guilty of both offenses, [but] he may be sentenced for only one." Id. at ¶ 27. We additionally note that the state "chooses which of the allied offenses to pursue at sentencing." *State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, at ¶ 20.

Conviction affirmed
and cause remanded.

KILBANE, P.J., and BLACKMON, J., concur.