[Cite as *State v. Baker*, 2011-Ohio-2784.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   95300

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JERMAINE BAKER

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga Common Pleas Court
Case No. CR-529184

BEFORE:   E. Gallagher, J., Blackmon, P.J., and Boyle, J.

RELEASED AND JOURNALIZED:   June 9, 2011
ATTORNEYS FOR APPELLANT

James R. Willis
323 W. Lakeside Avenue
420 Lakeside Place
Cleveland, Ohio   44113-1009

James C. Young
75 Public Square
Suite 600
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:    Brian D. Kraft
Assistant County Prosecutor
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio   44113


EILEEN A. GALLAGHER, J.:

{¶ 1}  Jermaine Baker appeals from his conviction rendered in the court of common pleas.  Baker argues the trial court failed to instruct the jury properly, his trial counsel rendered ineffective assistance, his convictions were not supported by sufficient evidence, and his convictions were against the manifest weight of the evidence.  For the following reasons, we affirm Baker's conviction.

{¶ 2}  The facts in the instant case arise from events that occurred on

August 29, 2009 in the neighborhood of Ansel Road and Korman Avenue in Cleveland, Ohio. The incident involved individuals from this neighborhood who knew each other for lengthy periods of time. On August 29, 2009, at approximately 4:00 p.m., a woman named Calandra Coleman observed a fight outside of Abco's Deli located at 1023 Ansel Road, Cleveland, Ohio. The fight was between defendant- appellant and a man named Mario, also known as Rio Burks. Calandra testified that the fight was brief, but punches were thrown between Mario and the defendant, with their respective friends watching in the background.

{¶ 3} Calandra testified that the fight occurred because Baker informed authorities in Pennsylvania about the illegal activity of one of Mario's friends. Mario learned of what Baker had done and circulated a multiple page flier with photographs of Baker, labeling him as a snitch. The fight did not last more than a few moments and all parties went their separate ways.

{¶ 4} Approximately three hours later, Calandra and her son, D.L., who was then four months shy of his third birthday, left Calandra's mother's home located at East 79th and Korman Avenue. Calandra walked behind her son as he rode a motorized four-wheeler ahead of her. Calandra stated that she was heading east on Korman Avenue toward Ansel Road when she ran into Alexander Burks, Mario's brother. Calandra knew Alexander for

several years because he was the boyfriend of one of her friends. Additionally, Alexander was a friend of Calandra's boyfriend, Duane Landers. Alexander stopped Calandra's son from crossing into the street and all three individuals were stopped on the corner of Korman Avenue and Ansel Road.

{¶ 5} At the same time that Calandra and her son were traveling down Korman Avenue, Louise Lamboy was visiting Wanda Purdue, Baker's mother, at her house located at 25400 Grovewood, in Cleveland, Ohio.

{¶ 6} Louise stated that while she was at Wanda's home, Wanda asked her to drive Baker somewhere. Louise never asked where she was taking Baker but agreed and got into the driver's seat of Wanda's grey, Buick Park Avenue. Baker got into the back seat directly behind the driver's seat and instructed Louise on where to drive. As she was driving Baker around the streets of Cleveland, he instructed her to slow down. Although Louise could not identify the streets, she drove the vehicle to the stop sign at Ansel Road and Korman Avenue.

{¶ 7} Alexander, Calandra, and her son, D.L., were on the corner of Korman Avenue and Ansel Road when they observed a grey vehicle drive by. As the vehicle passed, both Calandra and Alexander observed the rear, driver's-side window lower and the occupant shoot what appeared to be a semi-automatic weapon. Both Calandra and Alexander identified the

shooter as Baker, a man whom they have known for many years and who used to live in the neighborhood. When the shooting began, Alexander jumped on top of D.L. to protect the child while Calandra ducked for cover behind a nearby vehicle. When the shooting stopped, Calandra frantically checked D.L. for injuries and discovered that he had been shot in his left foot.

{¶ 8} Louise testified that she heard a series of loud bangs and ducked her head. However, as she looked around for the source of the noise, she observed Baker with a gun, in the car's side mirror. Baker then yelled at her to flee the area.

{¶ 9} Calandra grabbed her son and ran with him to the home of Valencia Woods, located at 1031 Ansel Road. When Calandra arrived at Valencia's house, she stated, "J'ro shot my baby." Calandra explained that J'ro is short for Jermaine and is Baker's nickname. Valencia called 911 and reported the shooting.

{¶ 10} Multiple Cleveland police officers and EMS arrived and transported D.L. to University Hospitals for treatment. Officers Dustin Miller and Damir Savor assisted and secured the crime scene while officer Don Meel recovered multiple 9mm shell casings. Officer James Bryant interviewed Alexander, who had fresh scrapes on his body. Officer Bryant determined Alexander's identity and learned that there were two felony warrants outstanding for his arrest and then placed Alexander into custody.

Alexander provided a detailed statement to Detective Vincent Lucarelli while in custody and identified Baker as the shooter from a photo lineup.

{¶ 11} Calandra spoke with police officers at University Hospitals and identified Baker as the shooter. Additionally, although Louise returned to Pennsylvania after the shooting, she read about the incident in a Cleveland newspaper and contacted Crime Stoppers. Louise eventually contacted Detective Lucarelli and provided him with a detailed statement, identifying Baker as the shooter.

{¶ 12} The Cuyahoga County grand jury indicted Baker with three counts of felonious assault in violation of R.C. 2903.11(A)(2) and one count of felonious assault in violation of R.C. 2903.11(A)(1). All counts contained one-, three-, and five-year firearm specifications. The victim in Count 1 of the indictment was Alexander, the victim in Count 2 of the indictment was Calandra, and the victim in Counts 3 and 4 of the indictment was D.L. Baker pleaded not guilty and the case proceeded to trial on May 19, 2010.

{¶ 13} The state of Ohio presented the following witnesses: Alexander Burks, Louise Lamboy, Calandra Coleman, Valencia Woods, Officer James Bryant, Officer Don Meel, Detective Vincent Lucarelli, Officer Dustin Miller, and Officer Damir Savor. Baker presented the testimony of his mother, Wanda Purdue, and his girlfriend, Samantha Zack.

{¶ 14} On May 26, 2010, the jury returned a verdict of guilty on all

counts, including the firearm specifications. On June 17, 2010, the trial court merged the one- and three-year firearm specifications, merged all five-year firearm specifications, and merged Counts 3 and 4. The court then sentenced Baker to thirteen years in prison: three years on the three-year firearm specification to be served consecutive to five years on the five-year firearm specification to be served consecutive with and prior to the five-year concurrent prison sentences on each underlying count.

{¶ 15} Baker appeals from his conviction, raising the seven assignments of error contained in the appendix to this opinion.

{¶ 16} In his first and second assignments of error, Baker argues the trial court denied him due process when it failed to instruct the jury on the lesser charges of aggravated assault and negligent assault. Because these assignments of error involve similar issues of law and fact, we shall address them together.

{¶ 17} The basis for both Baker's first and second assigned errors is Baker's argument that, prior to firing a handgun on August 29, 2009, Mario Burks fired at him while he was riding in the grey, Buick Park Avenue. Accordingly, based on Baker's claims, the jury should have been instructed that he was provoked into defending himself and that under a lapse in due care, he failed to perceive that returning Mario's fire could cause harm to Alexander, Calandra, and D.L.

{¶ **18**} However, in making these arguments, Baker cites no testimony or evidence in the record that Mario Burks was present on the corner of Korman Avenue and Ansel Road at the time Baker shot his handgun or that Mario fired a weapon at Baker on August 29, 2009. All of the State's witnesses testified that Mario was not present when Baker fired the gun toward Alexander, Calandra, and D.L. and none of the defense witnesses at trial testified that Mario was present during the shooting. Moreover, Baker did not request that the court instruct the jury on the charges of aggravated assault and negligent assault.

{¶ **19**} In *State v. Ballew* (1996), 76 Ohio St.3d 244, 667 N.E.2d 369, the Ohio Supreme Court determined that if an attorney failed to object to a jury instruction, any claim of error on review is waived "unless, but for the error, the outcome of the trial clearly would have been otherwise." *Ballew* at 251, citing *State v. Underwood* (1983), 3 Ohio St.3d 12, 444 N.E.2d 1332. See, also, *State v. Jackson* (May 20, 1999), Cuyahoga App. No. 73571.

{¶ **20**} Crim.R. 52(B) is known as the "plain error rule." In *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, the Ohio Supreme Court, in interpreting Crim.R. 52(B) stated "[t]he power afforded to notice plain error * * * is one which courts exercise only in exceptional circumstances, and exercise cautiously even then." *Long* at 94. Quoting the United States

Court of Appeals for the Sixth Circuit in *United States v. Rudinsky* (C.A.6, 1971), 439 F.2d 1074, 1076, Long further explains "[t]he plain error rule is to be invoked only in exceptional circumstances to avoid a miscarriage of justice." *Long* at 94.

{¶ 21} As statutorily defined, the offenses of aggravated assault and negligent assault are inferior degrees of felonious assault. See R.C. 2903.12, and 2903.14; *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294; *State v. Hawkins,* Montgomery App. No. 21691, 2007-Ohio-2979. Nonetheless, even though an offense may be statutorily defined as a lesser included offense, a charge on the lesser included offense is required only if the evidence at trial would reasonably support both an acquittal on the greater crime charged and a conviction on the lesser included offense. *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286. Additionally, a court is required to provide instructions on a lesser included offense if the evidence supports the charge, even if counsel does not request this instruction. *State v.Wilkins* (1980), 64 Ohio St.2d 382, 415 N.E.2d 303.

{¶ 22} In the present case, there was absolutely no evidence produced at trial supporting Baker's position that the trial court should have instructed the jury on aggravated assault and negligent assault. There was no testimony from either the State or defense witnesses that indicated Mario

was present when the shooting took place. Also, there was no physical evidence found on the scene indicating more than one shooter. All the testimony at trial indicated that there was one shooter, and that shooter was Baker. Accordingly, because there was no evidence supporting a charge on either aggravated assault or negligent assault, we find the trial court did not commit plain error in providing its instructions to the jury.

{¶ 23} Baker's first and second assignments of error are overruled.

{¶ 24} In his third and fourth assignments of error, Baker argues his trial counsel rendered ineffective assistance in failing to file a motion to suppress identification testimony, failing to request lesser included offense instructions, failing to move for a new trial, and in failing to request a jury instruction on the weight to be afforded the testimony of an accomplice. These assigned errors involve the same standard of review; as such, we shall address them together.

{¶ 25} In order to prevail on a claim for ineffective assistance of counsel, the defendant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning

as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at 143.

{¶ 26} In determining whether counsel's performance fell below an objective standard of reasonableness, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland* at 689. Because of the difficulties inherent in determining whether counsel rendered effective assistance in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.

{¶ 27} It is with this standard in mind, that we address Baker's claims of his trial counsel's ineffectiveness.

Failure to File Motion to Suppress Identification Testimony

{¶ 28} Baker argues his counsel provided ineffective assistance when he failed to file a motion to suppress the identification testimony of Alexander and Calandra. In support of this claim, Baker points to one instance where Alexander testified that he did not see Baker inside the grey vehicle and that Calandra only identified Baker from a single photograph shown to her by Detective Lucarelli ten days after the incident.

{¶ 29} In both instances, Baker is incorrect in his statements. The

statement from Alexander that he did not see Baker inside the grey Buick Park Avenue was taken out of context. Alexander testified that he did not see Baker inside the vehicle until Baker started shooting. Alexander admitted that other people in the neighborhood told him that Baker was riding around in a grey vehicle earlier that day. More importantly, while Alexander may not have seen Baker in the grey vehicle earlier in the day, he was clear in his identification testimony of Baker as the shooter.

"Q. At what point did you first see the individual firing a gun at you?

"A. He was like right — right behind me like. Right there.

"Q. Were you able to see the individual that was shooting the gun?

"A. Yes.

"Q. How were you able to see the individual?

"A. Because he lift[ed] up out the window and pointed the gun like this.

"Q. And when you saw the individual pointing the gun at you, did you recognize the individual?

"A. Yes.

"Q. And how did you recognize him?

"A. I know him.

"Q. And who was the individual firing the gun?

"A. Jermaine Baker." (Tr. 352-353.)

{¶ 30} Second, with regards to Calandra's identification of Baker, Baker

is also mistaken in his arguments. Baker claims Calandra identified him from a single photograph provided by Detective Lucarelli some ten days after the incident. A close review of the record reveals that Detective Lucarelli never presented Calandra with a photo array because he found it unnecessary. Specifically, Detective Lucarelli explained that because Calandra knew Baker for several years and was clear about her identification of him as the shooter, a photo array was not necessary. Although Calandra testified that she was presented with a spread of multiple photos from which she identified Baker as the shooter, this inconsistency does not weaken her identification testimony.

"Q. When the car was right in front of you, were you able to determine who that individual was in the back seat?

"A. Yes.

"Q. And did you recognize this individual?

{¶ 31} "A. Yes.

"Q. And how were you able to recognize this individual?

"A. Because this individual was looking right in my eyes and I was looking right at him.

"Q. And was this individual familiar to you?

"A. From the neighborhood I'm sure he was.

"Q. And who was this individual?

"A. Mr. Baker." (Tr. 543-544.)

{¶ 32} Although trial counsel did not move to suppress the identification testimony cited by Baker, clearly, the motion would be unsuccessful. Both Alexander and Calandra knew Baker for several years prior to this incident and were clear in their identification of Baker as the shooter. Baker's trial counsel did not act ineffectively when it did not move to suppress the identification testimony.

Failure to Request Appropriate Jury Instructions

{¶ 33} Baker argues his trial counsel acted ineffectively when it failed to request a jury instruction on the charge of aggravated assault. However, as stated in this court's analysis of Baker's first assigned error, the outcome of Baker's trial would not have been different, if counsel had made such a request.

{¶ 34} Reviewing courts need not examine counsel's performance if a defendant fails to prove the second prong of prejudicial effect. *State v. Crosby*, 186 Ohio App.3d 453, 2010-Ohio-1584, 928 N.E.2d 795. "The object of an ineffectiveness claim is not to grade counsel's performance." *Bradley* at 143.

{¶ 35} Based on the foregoing, counsel did not act ineffectively in failing to request the lesser instruction on aggravated assault.

Failure to File Motion for a New Trial

{¶ 36} Next, Baker claims his trial counsel rendered ineffective assistance when he failed to file a motion for a new trial based on Crim.R. 33(A)(1). Crim.R. 33(A)(1) provides for the granting of a motion for new trial because of irregularity in the proceedings that prevented the defendant from receiving a fair trial.

{¶ 37} In making this argument, Baker points to no alleged procedural irregularity to support his claim. Accordingly, this court is without the means to review any alleged claim of ineffective assistance of counsel on this issue.

Failure to Request a Jury Instruction on the<br>Weight Given to Alleged Accomplice Testimony

{¶ 38} In this portion of Baker's appeal, he argues that his trial counsel acted ineffectively when he failed to request specific jury instructions regarding the testimony of State's witness Louise Lamboy. Baker argues that Louise was an accomplice and that the jury should have been instructed as such. Baker also claims that the court should have given a special instruction regarding Louise's testimony because she was a paid informant and a drug addict. Neither of Baker's arguments have merit.

{¶ 39} Baker's trial counsel did not request, and the trial court did not instruct the jury with any specific instruction regarding Louise's testimony because Louise was not an accomplice in this matter. She was never

charged as a codefendant and did not receive any agreement from the State in regards to immunity from prosecution. Plainly stated, the trial court did not provide the instruction mandated by R.C. 2923.03(D) because Louise was not an accomplice of Baker.

{¶ 40} Furthermore, no special instruction regarding Louise's testimony was warranted. Louise was not a paid informant as Baker suggests and nowhere in the record does it indicate otherwise. Although Louise admitted that she had prior troubles with alcohol and drugs, her testimony was that she was currently sober despite repeated attempts by trial counsel to impeach her.

{¶ 41} We cannot say that the outcome of trial would have been any different if the jury received special instructions regarding Louise's testimony. Louise identified Baker as the shooter, as did Alexander and Calandra. If the jury chose to provide no weight to Louise's testimony, they still could have found Baker guilty based on Alexander and Calandra's testimony alone. Accordingly, Baker's trial counsel did not act ineffectively when it failed to request specific jury instructions regarding Louise's testimony.

{¶ 42} Based on the foregoing, we decline to find that Baker's trial counsel rendered ineffective assistance. Baker's third and fourth assignments of error are overruled.

{¶ 43} In his fifth assignment of error, Baker argues that the State failed to present sufficient evidence that he committed the offenses of felonious assault with firearm specifications. In his sixth assignment of error, Baker argues that his conviction is against the manifest weight of the evidence. Although these arguments involve different standards of review, we will consider them together because we find the evidence in the record applies equally to both.

{¶ 44} The standard of review with regard to the sufficiency of the evidence is set forth in *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, as follows:

> "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

{¶ 45} *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, in which the Ohio Supreme Court held:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.)

{¶ 46} In evaluating a challenge based on manifest weight of the

evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. As the Ohio Supreme Court declared:

> "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'

> "* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387, 547. (Internal citations omitted.)

{¶ 47} This court is mindful that weight of the evidence and the credibility of witnesses are primarily for the trier of fact and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A

reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." *State v. Lindsey*, 87 Ohio St.3d 479, 2000-Ohio-465, 721 N.E.2d 995. (Internal citation omitted.)

{¶ 48} In the present case, the jury found Baker guilty of three counts of felonious assault, which pursuant to R.C. 2903.11(A)(2) provides as follows:

"(A) No person shall knowingly do either of the following:

"(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶ 49} The jury also found Baker guilty of one count of felonious assault pursuant to R.C. 2903.11(A)(1), which provides as follows:

"(A) No person shall knowingly do either of the following:

"(1) Cause serious physical harm to another or to another's unborn."

{¶ 50} The jury also found Baker guilty of one-, three-, and five-year firearm specifications, which, pursuant to R.C. 2921.141(A), 2941.145 (A), and 2941.146(A) provide as follows:

"[T]hat the offender had a firearm on or about the offender's person or under the offender's control while committing the offense * * * and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2921.141(A) and 2941.145(A).

"[T]hat the offender committed the violation of section 2923.161 of the Revised Code or the felony that includes, as an essential element,

purposely or knowingly causing or attempting to cause the death of or physical harm to another and that was committed by discharging a firearm from a motor vehicle other than a manufactured home." R.C. 2941.146(A).

**{¶ 51}** In support of its case, the state of Ohio presented the following evidence: the parties involved with this case knew each other for years and all, at one time or another, lived in the neighborhood where this crime took place; Calandra's testimony that Baker and a man named Mario got into a fight earlier in the day on August 29, 2009; Alexander's testimony that on August 29, 2009, he observed Baker shoot at him from the back of a grey vehicle and that he is the brother of Mario, the man Baker fought with earlier in the day; Calandra's testimony that on August 29, 2009, she observed Baker shoot at her and shoot her son, D.L. from the back of a grey vehicle; and Louise's testimony that she witnessed Baker firing a handgun from the back of the car that she was driving.

**{¶ 52}** In response, Baker put forth the following evidence: that Louise had a history of drug and alcohol abuse; that Mario circulated a multiple page flier identifying Baker as a snitch; that Mario's friends had weapons on them during Baker's fight with Mario; that Baker did not go anywhere in a vehicle with Louise, and that Baker picked up his daughter in Cleveland and returned with her to Pennsylvania for the weekend.

**{¶ 53}** Additionally, Baker argues that the State failed to present

sufficient proof to establish the identity of the shooter or "by a preponderance of the evidence that he was not guilty of felonious assault, but instead was guilty of the offense of either aggravated assault or negligent assault."  With regards to the identification testimony, we find that the State presented sufficient evidence to allow the case to be determined by the trier of fact.  Alexander, Calandra, and Louise all identified Baker as the individual who shot a handgun from the back of a moving vehicle.  Detective Lucarelli testified that Alexander, Calandra, and Louise all identified Baker as the shooter during statements made to him.  While Calandra did not identify Baker from a photo lineup, Detective Lucarelli stated that a lineup was unnecessary as Calandra knew Baker for years and was positive of her identification of him as the shooter.  Although Baker claims the State's witnesses testified inconsistently and that Louise's testimony should be given no weight, we are viewing the evidence in the light most favorable to the prosecution.  Moreover, we find no true inconsistencies with the witnesses' identification of Baker as the shooter.  As such, we find there was sufficient evidence to submit this case to the trier of fact.

{¶ 54} As to Baker's argument that he should have been found guilty of either of the lesser charges of aggravated assault or negligent assault, we addressed this argument in our analysis of Baker's first and second assignments of error.  Simply put, Baker presented no evidence that Mario

shot at him or that he returned fire under provocation, or that he failed to perceive that returning fire could result in Alexander, Calandra, or D.L. being hurt.

{¶ 55} Viewing all of the above in the light most favorable to the prosecution, we conclude that a reasonable trier of fact could have found all of the elements of felonious assault with one-, three-, and five-year firearm specifications in this case. Therefore, the State presented sufficient evidence to support Baker's convictions.

{¶ 56} We further find that the trier of fact did not lose its way in convicting Baker of four counts of felonious assault with one-, three-, and five-year firearm specifications. Though Baker argues that his version of events should have been relied upon by the trial court, the trier of fact is in the best position to weigh the evidence and the credibility of witnesses. As the reviewing court, we find that the trier of fact could reasonably conclude from the substantial evidence presented by the State, that the State has proven the offenses beyond a reasonable doubt. Accordingly, we cannot state that the trier of fact lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.

{¶ 57} For the above-mentioned reasons, we overrule Baker's fifth and sixth assignments of error.

{¶ 58} For his seventh and final assignment of error, Baker argues that the cumulative effect of the trial court's errors was prejudicial and denied him a fair trial. We find this assignment of error to lack merit.

{¶ 59} In *State v. DeMarco* (1987), 31 Ohio St.3d 191, 598 N.E.2d 1256, the Ohio Supreme Court recognized the doctrine of cumulative error. Pursuant to this doctrine, a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal. *State v. Garner* (1995), 74 Ohio St.3d 49, 656 N.E.2d 623.

{¶ 60} This doctrine is not applicable to the present case as we do not find multiple instances of harmless error. *State v. Webb*, 70 Ohio St.3d 325, 1994-Ohio-425, 638 N.E.2d 1023; *Garner*, supra. Accordingly, Baker's seventh and final assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for

execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

---

EILEEN A. GALLAGHER, JUDGE

PATRICIA A. BLACKMON, P.J., and
MARY J. BOYLE, J., CONCUR

## Appendix A

**Assignments of Error:**

I. **"Appellant was denied due process when the trial court failed to instruct the jury on aggravated assault after the trial court produced competent testimony that appellant was seriously provoked into defending himself from Rio while under the influence of sudden passion or a fit of rage."**

II. **"Appellant was denied due process when the trial court failed to instruct the jury on negligent assault after competent testimony was adduced at trial establishing circumstances that appellant, during a substantial lapse from due care, failed to perceive that returning Rio's fire could result in Coleman, Burks or Landers being hurt."**

III. **"Appellant was denied effective assistance of counsel when he was substantially and unfairly prejudiced by his trial counsel's failure to file a motion to suppress identification testimony, to request an aggravated assault instruction and to move the trial court for a new trial, all of which constituted a deficient performance in violation of the Sixth and Fourteenth Amendments."**

IV.   "The appellant's rights to due process and effective assistance of counsel were violated when the trial court did not instruct the jury on the proper weight to be given, if any, to the testimony of an alleged accomplice (who admitted to being drug addicted and sought to be a paid informant) and trial counsel did not request the instructions."

V.   "The verdicts finding appellant guilty of felonious assault were not supported by evidence sufficient to justify a finding of guilt beyond a reasonable doubt."

VI.   "The guilty verdicts were against the manifest weight of the evidence and are contrary to law."

VII.   "The cumulative effect of the errors in the trial violated due process and rendered the trial fundamentally unfair."