[Cite as *State v. Hamilton*, 2012-Ohio-1542.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 97145

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KEVIN N. HAMILTON

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-547368

**BEFORE:** Sweeney, P.J., Jones, J., and Keough, J.

**RELEASED AND JOURNALIZED:** April 5, 2012

**ATTORNEY FOR APPELLANT**

Thomas A. Rein, Esq.
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio 44114

**FOR APPELLANT**

Kevin Hamilton, Pro Se
No. 603-602
Lorain Correctional Institution
2075 S. Avon-Belden Road
Grafton, Ohio 44044

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Andrew J. Santoli, Esq.
        Allison Foy, Esq.
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, P.J.:

{¶1}   Defendant-appellant Kevin Hamilton ("defendant") appeals his aggravated robbery conviction.   After reviewing the facts of the case and pertinent law, we affirm.

{¶2}   On February 15, 2011, Caudill Potter left his GED class in Lakewood at the same time as defendant who was also a student in the class.   Potter heard the sound of a gun cocking as defendant pointed a 9mm firearm in Potter's face and demanded "everything" from Potter's pockets.   Potter threw approximately $200 cash and a pack of cigarettes on the ground.   Defendant told Potter to run, which Potter did.   As he ran, Potter called the police from his cell phone.   Potter identified defendant as the person who robbed him.   Cash and cigarettes were returned to Potter from defendant's possession.

{¶3}   On February 17, 2011, defendant was indicted for aggravated robbery in violation of R.C. 2911.01(A)(1) with firearm specifications.   The case was tried to the court, and on June 16, 2011, defendant was found guilty as indicted.   The court sentenced defendant to four years in prison for the robbery and three years for the gun specification to run consecutively for an aggregate prison term of seven years.

{¶4}   Defendant appeals and raises four assignments of error for our review.

{¶5}   I.   "The state failed to present sufficient evidence to sustain a conviction against appellant."

{¶6}   An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine

whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶7} Defendant was convicted of aggravated robbery in violation of R.C. 2911.01(A)(1), which reads in pertinent part that "[n]o person, in * * * committing a theft offense, * * * shall * * * [h]ave a deadly weapon * * * and either display the weapon [or] brandish it * * *."

{¶8} In the instant case, Potter's testimony alone is sufficient to convict defendant of aggravated robbery with a firearm specification. Potter testified that he and defendant were classmates in a GED program in Lakewood. According to Potter, although he and defendant were in the same class, they were not necessarily friends.

{¶9} Potter testified that on February 15, 2011, he walked out of school with defendant, because they were headed the same way and had been talking about electronics earlier that day. The two turned down a side street, Potter heard the sound of a gun cock, and saw defendant with "a nine millimeter, pointed directly at my face." Defendant stated, "Give me everything." Potter went into his pocket, and his cigarette pack and cash fell to the ground. Defendant told Potter to turn around and run.

{¶10} Potter kept his cell phone, which was in his hoody pocket, and when he turned the corner, he called 911. Potter headed back to the school, and the police met

him there. Potter described and identified defendant as the offender. The police apprehended defendant less than 20 minutes later, and returned Potter's cash and cigarettes to him. According to Potter, he took the cash out of his pocket twice at school that day, while near the vending machine, although he was unsure whether defendant saw this.

{¶11} In viewing this evidence in a light most favorable to the state, we find that a rational trier of fact could have found that defendant robbed Potter at gunpoint, thus meeting the elements of aggravated robbery. Accordingly, defendant's first assignment of error is overruled.

{¶12} In defendant's second assignment of error, he argues as follows:

{¶13} II. "Appellant's conviction is against the manifest weight of the evidence."

{¶14} To warrant reversal of a verdict under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 386.

{¶15} Specifically, defendant argues that there was no physical evidence of a gun and that the victim's testimomy was less credible than defendant's testimony.

{¶16} Potter testified that defendant had a gun. "Under Ohio law a defendant may be convicted solely on the basis of circumstantial evidence." *State v. McClutchen*,

8th Dist. No. 81821, 2003-Ohio-4802, ¶ 32. In *McClutchen*, the defendant's convictions were upheld based on eyewitness testimony that he had a gun and aimed it in the direction of the victim. *Id.* at ¶ 34.

{¶17} Defendant testified that, on February 15, 2011, he spoke with Potter at school and they left together so defendant could sell Potter marijuana. According to defendant, the sale price was $215, and the marijuana was in his pocket. Defendant testified that after the sale was complete Potter was unhappy and wanted his money back. The two exchanged words and eventually went their separate ways. Shortly after this, the police stopped defendant on the street and told him that he matched the description of a person who had allegedly just committed a robbery.

{¶18} Carmen Rios testified that she was enrolled in GED classes with Potter and defendant. Rios stated that on February 15, 2011, she saw Potter and defendant leave school early. Potter came back after approximately 15 minutes, "all frantic and stuff * * * and said that he had just got robbed." Samantha Mize, another student in the class, testified that she saw defendant and Potter leave school on February 15, 2011. Fifteen or 20 minutes later, Potter came back and said that he had been robbed.

{¶19} Lakewood Police Officer Anthony Ciresi testified that on February 15, 2011, he responded to a call that a male was robbed at gunpoint. Officer Ciresi arrived at the school and spoke with the victim, Potter. Officer Ciresi testified as follows:

> I learned that the victim left the school with a male, and as they were walking out of the school, they were having a general conversation, * * * and when they rounded the corner to go westbound * * *, the male had

pulled a gun out, and said, * * * I want everything, and * * * [Potter] threw the rest of his money out on the ground and some cigarettes.

{¶20}  Less than ten minutes later, a suspect had been apprehended.  Officer Ciresi took Potter down the street where Potter identified defendant as the man who robbed him.

{¶21}  Upon review of the trial testimony, we cannot say that the court lost its way in convicting defendant of aggravated robbery, and his second assignment of error is overruled.

{¶22}  Defendant's third assignment of error states the following:

{¶23}  III.  "The trial court erred when it admitted other acts testimony in violation of R.C. 2945.59, Evid.R. 404(B) and Apellant's rights under Article I, Section 10 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution."

{¶24}  Specifically, defendant argues that evidence that he may have had a gun on prior occasions was inadmissible at trial.  The state, on the other hand, argues that this evidence "indicates [defendant's] opportunity and intent to commit a robbery."  The state further argues that, in the alternative, if this evidence was impermissibly introduced at trial, any resulting error was harmless.

{¶25}  Generally, evidence of other crimes committed by a defendant is inadmissible to prove that the defendant committed the offense in question.  R.C. 2945.59 states that "[i]n any criminal case in which the defendant's motive * * *, intent, * * * absence of mistake or accident * * *, scheme, plan, or system in doing an act is

material," other acts that tend to prove these things are admissible into evidence. Evid.R. 404(B) states that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶26} We review the admission of evidence under an abuse of discretion standard. *State v. Mauer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984). "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Additionally, the Ohio Supreme Court has held that "R.C. 2945.59 and Evid.R. 404(B) codify the common law with respect to evidence of other acts of wrongdoing, and are construed against admissibility." *State v. Lowe*, 69 Ohio St.3d 527, 530, 634 N.E.2d 616 (1994).

{¶27} In the instant case, Rios testified that on February 7, 2011, she and two other students, Mize and James, gave defendant a ride home from school. Rios heard a clicking noise from the backseat of the car, which she thought sounded like a gun. She asked defendant if that was a gun, and he replied, "Yes, * * * I thought that you saw it on my hip in class."

{¶28} Mize testified that she was in the front passenger seat of the car Rios was driving on February 7, 2011, when they gave defendant and James a ride home. At one

point, Rios asked defendant if he had a gun. Mize testified that "he said yes, and he thought we saw it in class."

{¶29} Michelle Morris, the operations manager for Next Step West Haven, the semi-independent apartment complex at which defendant was living, testified that she cleaned out defendant's apartment when he left. Morris found a bullet under the mattress of defendant's bed. Additionally, Lakewood Police Detective Scott Trommer testified that he investigated this robbery and was called about a bullet that was found in defendant's room on February 22, 2011.

{¶30} Upon review, we find this case analogous to *State v. Crosby*, 186 Ohio App.3d 453, 928 N.E.2d 795 (8th Dist.). In *Crosby*, this court analyzed whether the trial court "erred when it allowed testimony that defendant was known to carry a 9 mm handgun, which was the caliber weapon used to shoot the victim." *Id*. at ¶ 8. *Crosby* cited *State v. Watson*, 28 Ohio St.2d 15, 275 N.E.2d 153 (1971), for the legal proposition that evidence that shows a connection between the murder weapon and the defendant is admissible at trial. *Id.* at ¶ 12. In the case at hand, however, the gun was never recovered and nothing in the record shows that the gun defendant allegedly had on February 7, 2011 was the same gun used to rob Potter.

{¶31} *Crosby* next discusses that "this court has allowed into evidence testimony that the defendant was seen with a gun — not necessarily the gun involved in the offense — based on temporal and spacial proximity to the crime in question." *Id*. at ¶ 13. *See State v. Davis*, 8th Dist. No. 35421, 1977 WL 201136 (Jan. 6, 1977) (allowing testimony

that defendant was seen with a gun approximately 15 minutes after the offense was committed).

**{¶32}** The *Crosby* court held that "the testimony about defendant's being seen with a gun bears no such relationship to the offenses" of which he was convicted. *Id.* at ¶ 14. The testimony in question in *Crosby* was rather generic statements that defendant was known to carry a gun, and "no mention was made of any time-frame or specific incidents when defendant was seen with a gun." *Id.* at ¶15.

**{¶33}** We find that the same principles apply to the instant case. Two witnesses testified that defendant had a gun eight days before the robbery, although neither witness saw a gun. There was also evidence that a bullet was found in defendant's room seven days after the robbery. This evidence merely weighs toward defendant's propensity to carry a gun and does not link defendant to the gun used in the robbery; therefore, it was improperly admitted.

**{¶34}** Although it was error to allow the other acts testimony in the instant case, we nonetheless find that it was harmless under Crim.R. 52(A) because it did not affect defendant's substantial rights. "The defendant has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error. Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." *State v. Cooper*, 8th Dist. No. 86437, 2006-Ohio-817, at ¶19.

**{¶35}** Because we found that the weight of the evidence supported defendant's convictions, we cannot say that this improper testimony contributed to the jury's finding him guilty. Accordingly, defendant's third assignment of error is overruled.

**{¶36}** In defendant's fourth and final assignment of error, he argues that:

**{¶37}** IV. "Appellant was denied a fair trial by the prosecutor's closing argument."

**{¶38}** Specifically, defendant argues that the following statements by the prosecutor were improper:

> [Det. Trommer] spoke with the defendant, who denied even having conversations with the victim, denied really knowing who he was, and certainly, didn't make any mention of selling marijuana to him as he has for the first time today in court.

**{¶39}** This court has held that "the use for impeachment purposes of a petitioner's silence, after arrest and after receiving *Miranda* warnings, violates his right to due process of law under the Fourteenth Amendment." *State v. Burford*, 8th Dist. No. 64432, 1993 WL 515605 (Dec. 9, 1993). In *State v. Gillard*, 40 Ohio St.3d 226, 533 N.E.2d 272 (1988), the Ohio Supreme Court distinguished a defendant exercising his right to remain silent from a defendant voluntarily talking with the police and choosing to omit certain alleged facts. "[A] defendant who chooses to talk has not relied on that promise [that silence cannot be used against him] with respect to what he talks about. 'If a defendant voluntarily offers information to police, his toying with the authorities by allegedly telling only part of his story is certainly not protected by *Miranda* * * *.'"

*Gillard*, at 278 (quoting *State v. Osborne*, 50 Ohio St.2d 211, 216, 364 N.E.2d 216 (1977)).

{¶40} Our review of the record shows that defendant did not exercise his right to remain silent when questioned by police. Rather, defendant denied the accusations against him and denied speaking to or knowing Potter. Subsequently, defendant testified that he knew and spoke with Potter on the day in question and that this incident was the result of a drug deal gone bad. Therefore, impeachment regarding the inconsistencies between defendant's statement to police and his trial testimony was proper. Accordingly, defendant's fourth and final assignment of error is overruled.

{¶41} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
KATHLEEN ANN KEOUGH, J., CONCUR