[Cite as *State v. Williams*, 2011-Ohio-4812.]

[Vacated opinion.    Please see 2011-Ohio-5483.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95796**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BENJAMIN WILLIAMS

DEFENDANT-APPELLANT

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Common Pleas Court
Case No. CR-532133

**BEFORE:**    E. Gallagher, J., Blackmon, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:**    September 22, 2011

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Public Defender
BY:    Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio    44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:     Gregory Mussman
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


EILEEN A. GALLAGHER, J.:

{¶ 1}  Defendant-appellant, Benjamin Williams, appeals from his convictions in the Cuyahoga County Court of Common Pleas.  For the following reasons, we reverse the judgment of the trial court and remand for further proceedings.

{¶ 2}  Appellant was indicted on December 29, 2009, and charged with aggravated murder in violation of R.C. 2903.01(A)(Count 1), aggravated murder in

violation of R.C. 2903.01(B) (Count 2), aggravated robbery in violation of R.C. 2911.01(A)(1) (Count 3), aggravated robbery in violation of R.C. 2911.01(A)(3) (Count 4), and discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3) (Count 5). One- and three-year gun specifications pursuant to R.C. 2941.141(A) and 2941.145(A), respectively, were attached to all five counts.

{¶ 3} Count 5 was voluntarily dismissed by the state prior to trial that commenced on July 6, 2010. The jury returned a verdict of not guilty on Counts 1 and 3 as well as to the lesser included offense of murder under Count 1. The jury found appellant guilty of aggravated murder as to Count 2 and guilty of aggravated robbery as to Count 4. The jury further found appellant not guilty of the gun specifications on Counts 2 and 4.

{¶ 4} On September 8, 2010, prison terms of life with parole eligibility after 30 years on Count 2 and ten years on Count 4 were imposed. The trial court ordered the sentences to run concurrently. Appellant brought the present appeal raising the nine assignments of error contained in the appendix to this opinion.

{¶ 5} In his first assignment of error, appellant posits that the State failed to present sufficient evidence that he committed the crimes of aggravated robbery and aggravated murder.

{¶ 6} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to

determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (superseded by statute and constitutional amendment on other grounds). A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541, (Cook, J., concurring).

**{¶ 7}** Appellant was convicted of aggravated murder as charged in Count 2 in violation of R.C. 2903.01(B). Pursuant to R.C. 2903.01(B), "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, * * * aggravated robbery * * *."

**{¶ 8}** Appellant was also convicted of aggravated robbery as charged in Count 4 in violation of R.C. 2911.01(A)(3), which provides that, "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: * * * (3) Inflict, or attempt to inflict, serious physical harm on another."

{¶ 9}   Although theft requires that the accused actually obtain or exert control over the property, attempted theft has no such requirement.  R.C. 2923.02(A) defines attempt as "conduct that, if successful, would constitute or result in the offense." "Criminal attempt" is an act or omission constituting a substantial step in a course of conduct planned to culminate in the actor's commission of the crime but that falls short of completion of the crime.  *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, at ¶101, citing *State v. Woods* (1976), 48 Ohio St.2d 127, 357 N.E.2d 1059, paragraph one of the syllabus, overruled in part on other grounds by *State v. Downs* (1977), 51 Ohio St.2d 47, 53, 364 N.E.2d 1140.  A "substantial step" requires conduct that is "strongly corroborative of the actor's criminal purpose." Id.

{¶ 10} The elements of an offense may be established by direct evidence, circumstantial evidence or both.  *State v. Durr* (1991), 58 Ohio St.3d 86, 568 N.E.2d 674.  Circumstantial evidence is defined as, "'[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought proved. * * * '"  *State v. Nicely* (1988), 39 Ohio St.3d 147, 150, 529 N.E.2d 1236, quoting Black's Law Dictionary (5th Ed.1979) 221.   Circumstantial and direct evidence are of equal evidentiary value.  *State v. Jenks* (1991), 61 Ohio St.3d 259, 272, 574 N.E.2d 492.

{¶ 11} The following relevant facts were adduced at trial:  James Zagorski was shot the night of September 15, 2008, in the parking lot of a Food Plus convenient store

situated at Glendale and Lee Road in Cuyahoga County. Zagorski was transported, via ambulance, to Metro Hospital where he was pronounced dead at 10:05 p.m. Zagorski had intended to rendevous with Kevin Warner that night in order to purchase marijuana from Warner. Warner was working at a nearby Popeye's Chicken at the time Zagorski arrived in the area and, therefore, he could not immediately conduct the sale. Zagorski waited for Warner, in his car, in the parking lot of the Food Plus convenient store.

{¶ 12} Passing witnesses observed a number of young men congregating on the side of the Food Plus store near Zagorski's car and one witness heard gunshots and then saw the young men dispersing. Shortly after the gunshots, witnesses observed Zagorski's car move from the side of the Food Plus building and crash into a nearby pole.

{¶ 13} An autopsy performed by the Cuyahoga County Coroner's Office established that Zagorski died from a single gunshot wound to the chest. Forensics established that the fatal shot was fired from the driver's side of Zagorski's car.

{¶ 14} In Zagorski's vehicle police found $60 and two pill bottles containing marijuana. At Metro Hospital, $1,212.18 was recovered from Zagorski's person.

{¶ 15} At trial, circumstantial evidence was presented that appellant attempted to commit a theft offense and in so doing inflicted serious physical harm upon Zagorski. Evidence was presented that, in the course of the attempted aggravated robbery, appellant purposely caused the death of Zagorski. Police found discarded cigar tips and

saliva at the scene from which DNA was recovered. That DNA placed witnesses Daquan Jackson and Jermaine Jefferson in the group of young men who were present at the scene of the crime.

{¶ 16} Jackson and Jefferson both placed appellant at the scene of the crime when Zagorski was shot. Jefferson testified that the group of young men observed Zagorski waiting in his car and that there was a discussion about robbing Zagorski. Jefferson testified that appellant stated that he wanted to rob Zagorski and that appellant turned and began to approach Zagorski's car when Jefferson walked away to avoid the situation. Jackson testified that when he left appellant was standing roughly four or five feet away from the *passenger* side of Zagorski's car. Both Jefferson and Jackson testified to hearing a gunshot a short time later. Jefferson testified that appellant told him "that he wasn't like supposed to have killed him or shot him or anything" which, when considered in a light most favorable to the prosecution, provides circumstantial evidence that Zagorski was shot by appellant during a failed robbery.[1]

{¶ 17} Appellant cites *State v. Scott*, Cuyahoga App. No. 83477, 2004-Ohio-4631, for the proposition that "mere words" by a defendant expressing an intent to take something do not "constitute a substantial step in the commission of a theft offense so as

---

[1]Although we consider Jefferson's testimony in a light most favorable to the prosecution for the purposes of our sufficiency analysis, we note the ambiguity of Jefferson's choice of words. Jefferson never identified appellant as the individual to whom Jefferson referred as "he." Neither party sought clarification from Jefferson on this issue.

to support a conviction for aggravated robbery" and aggravated felony murder. *Scott* is distinguishable from the case sub judice, however. In *Scott*, the defendant believed that one man among a group of men had stolen his jacket. Scott, and the witnesses who later testified against him, followed the group of men but eventually lost sight of the man Scott believed to be in possession of his property. Scott told witnesses that he intended to steal a jacket from another man in the group. However, when Scott confronted the man, Scott immediately opened fire with a handgun and made no effort to commit a theft offense. We noted in *Scott* that, despite his previously stated intentions, the defendant "made no attempt to deprive [the victim] of any property either before or after this senseless foray." The evidence suggested it was more likely that Scott was "seeking revenge in any form, but settled on inflicting fatal gunshot wounds rather than the pursuit of [the victim's] jacket." We concluded that, "[a]s such, appellant's mere words to the effect that he would take [the victim's] jacket did not constitute a substantial step in the commission of a theft offense so as to support a conviction for aggravated robbery." Id. at ¶14.

{¶ 18} In the present case, unlike *Scott*, there is evidence that a theft was attempted but went awry. Appellant expressed his intent to rob Zagorski. Jefferson saw appellant approach Zagorski's car and did not hear a gunshot until at least a minute later. Finally, Jefferson's conversation with appellant after the shooting is circumstantial evidence that an attempted theft occurred.

{¶ 19} Viewing the above evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of aggravated robbery and aggravated murder proven beyond a reasonable doubt.

{¶ 20} Appellant's first assignment of error is overruled.

{¶ 21} As appellant's fourth assignment of error is, in essence, a sufficiency challenge, we briefly address it out of order here. Appellant argues that he did not receive a fair trial as required by due process because the jury failed to follow the trial court's jury instructions. Appellant's indictment charged him as the principal offender, not as an accomplice pursuant to the complicity statute, R.C. 2923.03. The State did not request and the trial court did not provide the jury with a complicity instruction. Appellant argues that absent a complicity instruction, the jury could not convict him based on its own theory that he was complicit in the murder, although he did not actually commit it.

{¶ 22} Appellant's argument in this instance is essentially a sufficiency challenge. Appellant's arguments rely on his assertion that the State did not present sufficient evidence that he shot Zagorski. Appellant cites *State v. Frost*, 164 Ohio App.3d 61, 2005-Ohio-5510, 841 N.E.2d 336, for the proposition that in the absence of a complicity instruction, he cannot be convicted as an aider and abetter. Appellant's reliance on *Frost* is misplaced. In *Frost*, unlike the present case, the defendant was tried under the theory that he was an accomplice. The State provided sufficient evidence that Frost was

an accomplice to robbery and that his co-defendant, Walton, was the principal. The trial court, however, instructed the jury as though Frost had been a principal and did not provide the jury with an instruction on aiding and abetting, as requested by the State. The Second District Court of Appeals reversed Frost's conviction for robbery because the record was devoid of any evidence to support Frost's conviction as a principal in the crime.

{¶ 23} In the present case, unlike *Frost*, viewing the evidence in a light most favorable to the prosecution, the state presented sufficient evidence, as discussed above, that appellant was the principal offender in both of the crimes for which he was convicted.

{¶ 24} Appellant's fourth assignment of error is overruled.

{¶ 25} Appellant argues in his second assignment of error that his convictions were against the manifest weight of the evidence. The question to be answered when a manifest-weight issue is raised is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Internal citations and quotations omitted.) *State v. Leonard*, 104 Ohio St.3d 54, 68,

2004-Ohio-6235, 818 N.E.2d 229.

{¶ 26} The weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Where a judgment is supported by competent, credible evidence going to all essential elements to be proven, the judgment will not be reversed as being against the manifest weight of the evidence. *State v. Annable*, Cuyahoga App. No. 94775, 2011-Ohio-2029, at ¶60, citing *State v. Mattison* (1985), 23 Ohio App.3d 10, 14, 490 N.E.2d 926. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶ 27} After reviewing the entire record, considering the credibility of the witnesses and weighing the evidence, we find that the jury clearly lost its way in resolving conflicts in the evidence, and a manifest miscarriage of justice resulted. The record lacks consistent, credible evidence to support the jury's verdict that appellant was guilty of aggravated robbery and aggravated murder.

{¶ 28} As discussed above, appellant was indicted and tried as the principal offender in the alleged crimes, not as an accomplice. Though the state presented sufficient evidence to support appellant's convictions, the weight of the evidence clearly favored the conclusion that appellant was not the principal offender of these crimes.

{¶ 29} We reach this conclusion based upon the fact that the appellant was not linked to the crime or crime scene by any tangible evidence. The only link between appellant and the shooting was the testimony of Jackson and Jefferson. Neither Jackson nor Jefferson came forward and provided statements to police until after DNA evidence had physically linked each of them to the crime scene. The credibility of both of these witnesses was called into question at trial. Jackson had previously been convicted of a felony and contradicted, at trial, his prior accounts of which specific individuals were present at the crime scene on the night of the shooting. Jefferson initially lied to police and claimed that he did not see anything the night of the shooting. Only after Jefferson's DNA was tied to the crime scene, and he was threatened with a charge of obstructing justice, did Jefferson implicate appellant in Zagorski's shooting. Both Jackson and Jefferson testified that they conveniently left the scene moments prior to the shooting despite third-party testimony that multiple young men fled the scene just *after* the gunshots were heard. Neither witness saw appellant with a gun the night of the shooting and no witness saw appellant shoot Zagorski.

{¶ 30} Finally, forensic evidence established that Zagorski was shot from just outside the driver's side of his car. Incongruously, Jackson placed appellant on the *passenger* side of Zagorski's vehicle just prior to the shooting. This inconsistency particularly stands out in light of Jefferson's testimony. As discussed above, Jefferson's recounting of appellant's alleged statement, "that he wasn't like supposed to have killed

him or shot him or anything" was ambiguous because Jefferson did not clarify that the "he" in the statement referred specifically to appellant as opposed to an accomplice.

{¶ 31} After reviewing the entire record, weighing all of the evidence and considering the credibility of witnesses, we find that this is the exceptional case where the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Leonard*, 104 Ohio St.3d at 68.

{¶ 32} Appellant's second assignment of error is sustained.

{¶ 33} In his third assignment of error, appellant argues that the trial court erred in responding to two jury questions.

{¶ 34} During deliberations the jury posed the following questions:

{¶ 35} "1. "Under count 1, the lesser charge ... Based on definition of Purpose: Does [appellant] have to be holding the gun or does he have to be involved in an action that brought about the result of [Zagorski's] death?"

{¶ 36} "2. "To be charged with any of these counts, does the State have to prove that [appellant] had the gun in his hand?"

{¶ 37} The trial court responded to these questions by referring the jury back to the provided jury instructions, stating, "All I can tell you is that you have the pertinent law in the jury charge."[2]

---

[2]We note that the record is incomplete in that the trial court conducted off the record proceedings with respect to the jury questions and objections throughout the trial. However, in the affidavit of trial counsel Jeffrey Richardson attached to appellant's motion for a new trial filed July

{¶ 38} Appellant argues that the trial court erred in failing to respond to the jury's questions in greater detail.

{¶ 39} Where, during the course of its deliberations, a jury requests further instruction, or clarification of instructions previously given, a trial court has discretion to determine its response to that request. A reversal of a conviction based upon a trial court's response to such a request requires a showing that the trial court abused its discretion. *State v. Carter*, 72 Ohio St.3d 545, 552-553, 1995-Ohio-104, 651 N.E.2d 965; *State v. Lindsey* (2000), 87 Ohio St.3d 479, 488, 721 N.E.2d 995. Absent error in the original jury instructions, a trial court does not abuse its discretion by referring the jury to a written copy of the instructions rather than giving further oral instructions. Id. at 553, 651 N.E.2d 974; *Lindsey*, 87 Ohio St.3d at 488.

{¶ 40} In the case sub judice, appellant argues that the trial court erred by not clarifying for the jury that in order to convict him of the above crimes the jury would necessarily have to find that he was the principal offender, i.e. the shooter. Appellant

---

26, 2010 and denied on September 8, 2010, Mr. Richardson does aver that he requested that the trial court respond "no" to both of the jury's questions in light of the fact that no complicity instruction was provided. Mr. Richardson avers that the state opposed his suggested answer and that he objected to the trial court's ultimate decision to refer the jury back to the previously provided jury instructions. Appellant additionally attached to his motion for a new trial the affidavit of Juror X, a juror on the case, in support of appellant's contention that the jury was confused by the jury instructions. Juror X averred that, "after receiving no answer to our question, several jurors attempted to figure out on their own what connection to the criminal conduct was sufficient to find [appellant] guilty. The entire panel was very confused, and we never agreed on a definition or explanation for what his involvement needed to be."

does not take issue with any specific written or oral jury instructions provided by the trial court. The trial court in this instance did not abuse its discretion by referring the jury back to the original instructions. See, also, *State v. Smith*, Belmont App. No. 06 BE 22, 2008-Ohio-1670 (where jury question sought clarification as to whether the State needed to prove that defendant personally pulled the trigger in order to convict for murder, the trial court's reference back to the original instructions was not an abuse of discretion where the instructions lacked any deficiency).

{¶ 41} Appellant's third assignment of error is overruled.

{¶ 42} In his fifth assignment of error, appellant argues that the jury's verdict is inconsistent because it found him guilty of aggravated robbery and aggravated murder but not guilty of the firearm specifications attached to those two counts. "Under Ohio law, the several counts of an indictment containing more than one count are not interdependent, and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Houser* (May 30, 1996), Cuyahoga App. No. 69639, citing *State v. Brown* (1984), 12 Ohio St.3d 147, 465 N.E.2d 889.

{¶ 43} We have repeatedly held that a not guilty verdict with regard to a firearm specification is not inconsistent with a guilty verdict for aggravated robbery. *State v. Hardware*, Cuyahoga App. No. 93639, 2010-Ohio-4346, at ¶15. Appellant argues that based upon the Ohio Supreme Court's holding in *State v. Evans*, 113 Ohio St.3d 100,

2007-Ohio-861, 863 N.E.2d 113, a firearm specification is considered dependent on the underlying charge, and thus the two should be considered the same count. This court previously rejected this argument in *Hardware*, relying on our prior holding in *State v. Fair*, Cuyahoga App. No. 89653, 2008-Ohio-930, wherein we held that the underlying offense and the firearm specification constitute different crimes. Id. at ¶24, citing *State v. Boyd* (1996), 110 Ohio App.3d 13, 673 N.E.2d 607. We are unwilling to overrule this court's holding in *Fair*.

{¶ 44} Appellant's fifth assignment of error is overruled.

{¶ 45} In his sixth assignment of error, appellant argues that he was deprived of his due process right to a fair trial due to prosecutorial misconduct. Specifically, appellant argues that the prosecutor engaged in misconduct by suggesting to the jury that he personally believed the defendant was guilty, by soliciting speculative and inadmissible testimony, by asking the investigating detective to improperly bolster other witnesses' testimony and by urging the jury to consider facts not in evidence.

{¶ 46} The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Bey*, 85 Ohio St.3d 487, 1999-Ohio-283, 709 N.E.2d 484; *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, cert. denied, 498 U.S. 1017, 111 S.Ct. 592, 112 L.Ed.2d 596. A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch*

(1987), 33 Ohio St.3d 19, 24, 514 N.E.2d 394. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. *Bey*, 85 Ohio St.3d at 487.

{¶ 47} Appellant did not object at trial to the comments he now challenges as improper. In the absence of objection to improper comments, the alleged prosecutorial misconduct can only be the basis for reversal if it rises to the level of plain error. Crim.R. 52(B). To constitute plain error, the error must be obvious on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See *State v. Tichon* (1995), 102 Ohio App.3d 758, 767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. *State v. Waddell* (1996), 75 Ohio St.3d 163, 166, 661 N.E.2d 1043. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Phillips*, 74 Ohio St.3d 72, 83, 656 N.E.2d 643.

{¶ 48} Our focus, upon review, is whether the prosecutor's comments deprived appellant of a fair trial such that there is a reasonable probability that, but for the prosecutor's misconduct, the result of the proceeding would have been different. *State v. Onunwor*, Cuyahoga App. No. 93937, 2010-Ohio-5587, at ¶42, citing *State v. Loza* (1994), 71 Ohio St.3d 61, 78-79, 641 N.E.2d 1082, overruled on other grounds.

{¶ 49} Appellant first argues that the state committed prosecutorial misconduct when the prosecutor told the jury that he was "here to bring the person that [killed

Zagorski] to justice." (Tr. 428, 578.) Prosecutors may not express their personal beliefs or opinions regarding the guilt of the accused. *State v. Elliott*, Cuyahoga App. No. 91999, 2009-Ohio-5816, at ¶26, citing *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293. Appellant argues that the prosecutor's statements regarding his purpose or role at court violated this rule. We disagree. "Isolated comments by a prosecutor are not to be taken out of context and be given their most damaging meaning." *State v. Hill* (1996), 75 Ohio St.3d 195, 204, 661 N.E.2d 1068, citing *Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431. A review of the record does not support appellant's contention that the prosecutor's comments amounted to an expression of his personal belief regarding the appellant's guilt.

{¶ 50} Appellant's second prosecutorial misconduct argument is that the state deprived him of a fair trial by eliciting speculative testimony. Appellant cites the prosecutor's direct examination of Jefferson, where it was established that Jefferson did not actually witness a confrontation between appellant and Zagorski and did not witness the shooting. Nonetheless, Jefferson testified that when he later heard a gunshot he could "put it together and seen what had happened." The prosecutor then asked him what he had "put together," to which Jefferson replied, "[t]hat they went over to rob him and shot him and he tried to pull out and probably died while he was trying to pull out." There is no indication that Jefferson possessed any personal knowledge to support this

testimony as required by Evid.R. 602. In fact, Jefferson's testimony leaves no doubt that he lacked personal knowledge in this instance. Although appellant did not object to this testimony at trial, it is clear upon review that the prosecutor improperly solicited from Jefferson testimony that was speculative and was established to be beyond his personal knowledge. The trial court should not have permitted Jefferson to testify as to what his imagination had concocted out of the circumstances. The jury was fully capable of drawing its own inferences from the evidence without the aid of Jefferson's speculation. Jefferson's speculative testimony was improperly elicited and admitted.

{¶ 51} Appellant additionally cites to the direct examination of Detective Veverka, wherein the following exchange occurred:

{¶ 52} Prosecutor: "Now, at this point, is there anything left to do as part of your investigation?"

{¶ 53} Detective Veverka: "At this point we were still trying to identify a second individual."

{¶ 54} Prosecutor: "And why is that?"

{¶ 55} Detective Veverka: "We have reports that two individuals approached James Zagorski's car. Our investigation led us to believe that Benjamin Williams was one of the individuals and we're still trying to determine who the second individual is."

{¶ 56} Appellant argues that the prosecutor engaged in misconduct by eliciting this testimony because it suggested that Detective Veverka reached his own conclusion

about appellant's guilt based on evidence that was not presented to the jury. Appellant draws this conclusion from the fact that none of the witnesses at trial testified to a second individual approaching Zagorski's car.

{¶ 57} Even assuming that the testimony quoted above was improperly admitted, we do not find that the statements prejudicially affected appellant's substantial rights. When considering the entire record in this case, we cannot say that absent the improper testimony, the jury verdict would have been different.

{¶ 58} Appellant next argues that the prosecutor improperly used the testimony of Detective Veverka to bolster the credibility of Carlton Tidmore and Daquan Jackson. Generally, the opinion of a witness as to whether another witness is being truthful is inadmissible. *State v. Boston* (1989), 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (overruled on other grounds). It is undisputed that a police officer may not testify as to a witness's veracity. *State v. Black*, Cuyahoga App. No. 92806, 2010-Ohio-660, at ¶31, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶122. In our system of justice, it is the factfinder, not the expert or lay witness, who bears the burden of assessing the credibility or veracity of a witness. *State v. Eastham* (1988), 39 Ohio St.3d 307, 312, 530 N.E.2d 409.

{¶ 59} The record does not support appellant's contention that the prosecutor elicited testimony from Detective Veverka to bolster the credibility of Tidmore and Jackson. Tidmore himself admitted that he told the police "about a half-dozen different

stories" about where he got the gun police recovered from him. Detective Veverka's testimony was limited to confirming that one of many of Tidmore's gun acquisition stories was verified. In regards to Jackson, the record reveals that the prosecutor did not ask a question seeking Detective Veverka's opinion on Jackson's credibility. Rather, Veverka testified that after Jackson's DNA was linked to the scene, he was questioned as part of the investigation "and he testified to what he told us and that is consistent with what he told us that day." The prosecutor's question in no way elicited this response and, considering the inconsistencies in Jackson's testimony and Jackson's admission that he did not cooperate until his DNA was linked to the scene, it is unclear what effect Veverka's ambiguous statement could possibly have had on Jackson's credibility. Furthermore, Jackson's testimony added little to the state's case beyond placing the defendant at the scene, a fact corroborated by Jefferson.

{¶ 60} In his fourth, and final claim of prosecutorial misconduct, appellant takes issue with comments made by the prosecutor during closing arguments. In general, prosecutors are given considerable latitude in opening statements and closing arguments. *State v. Ballew* (1996), 76 Ohio St.3d 244, 255, 667 N.E.2d 369. In closing argument, a prosecutor may comment on "'what the evidence has shown and what reasonable inferences may be drawn therefrom.'" *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, quoting *State v. Stephens* (1970), 24 Ohio St.2d 76, 82, 263 N.E.2d 773. A prosecutor may not express his personal belief or opinion as to the credibility of a

witness, the guilt of an accused, or allude to matters that are not supported by admissible evidence. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883.

{¶ 61} The test for prejudice regarding prosecutorial misconduct in closing argument is "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Hessler*, 90 Ohio St.3d 108, 125, 2000-Ohio-30, 734 N.E.2d 1237, 1254, quoting *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883, 885.

{¶ 62} The wide latitude given the prosecution during closing arguments "does not 'encompass inviting the jury to reach its decision on matters outside the evidence adduced at trial.'" *State v. Hart*, Cuyahoga App. No. 79564, 2002-Ohio-1084, quoting *State v. Freeman* (2000), 138 Ohio App.3d 408, 419, 741 N.E.2d 566. A prosecutor must avoid "insinuations and assertions which are calculated to mislead the jury." *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudice the appellant. Id. at 15.

{¶ 63} Appellant takes issue with three portions of the prosecutor's closing argument. The first two excerpts cited by appellant pertain to the characterization of the testimony of the witnesses at trial and clearly did not substantially prejudice appellant. The third excerpt challenged by appellant contains a clear misstatement of trial testimony and the prosecutor references matters outside the evidence adduced at trial.

{¶ 64} At trial, the state called Danielle Simpson, a Food Plus employee who was working at the store the night of the shooting. Simpson testified that she witnessed Zagorski's car crash and that appellant approached her at a later date and inquired about Zagorski's death. The prosecutor, treating Simpson as a hostile witness, unsuccessfully attempted to elicit further testimony regarding incriminating statements appellant allegedly made to Simpson about his guilty conscience. Neither Simpson nor any other witness provided such testimony. Nonetheless, at closing argument, the prosecutor summarized Simpson's testimony as follows:

{¶ 65} "She told us that [appellant] came to her a week after this murder and told her: 'Do you know when that kid died? Did he die before he hit the pole or after he hit the pole?' And we know that she said she thought after he hit the pole. And we know what [appellant] said to her: 'Good. Now I can sleep at night.'"

{¶ 66} At the conclusion of closing arguments the prosecutor further stated:

{¶ 67} "[The Defense Attorney] asked you not to consider or weigh heavily on Danielle Simpson's testimony, not to really consider the fact that [appellant] admitted that he was going to hit that lick, that he said it wasn't supposed to go down that way, it was an accident, and he's trying to get you to not consider whether or not [appellant] came into that store and said, 'Now I can sleep at night' because he didn't die when he was shot * * *."

{¶ 68} The record is clear that Danielle Simpson did not testify as such at trial.

There is no question that the prosecutor's closing argument invited the jury to reach its decision on matters outside the evidence adduced at trial and was, therefore, improper. The only question remaining is whether the prosecutor's remarks substantially prejudiced and deprived appellant of a fair trial such that there is a reasonable probability that, but for the prosecutor's misconduct, the result of the proceeding would have been different.

{¶ 69} In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury still would have found the appellant guilty. *State v. Sopko*, Cuyahoga App. No. 90743, 2009-Ohio-140, at ¶55, citing *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 473 N.E.2d 768; *State v. Dixon* (Mar. 13, 1997), Cuyahoga App. No. 68338. When the prosecutor's comments are found to be improper, it is not enough that there is sufficient other evidence to sustain a conviction. Instead, it must be clear beyond a reasonable doubt that absent the prosecutor's comments, the jury would have found defendant guilty. *State v. Clay*, 181 Ohio App.3d 563, 576, 910 N.E.2d 14, 23, citing *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883. Stated another way, "a defendant's substantial rights cannot be prejudiced where the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt, and the outcome of the case would have been the same regardless of evidence admitted erroneously." *State v. Hicks*, Cuyahoga App. No. 95133, 2011-Ohio-3578, at 30, citing *State v. Williams* (1988), 38 Ohio St.3d 346, 349-350, 528 N.E.2d 910.

{¶ **70**} In *State v. Hill*, Cuyahoga App. No. 95379, 2011-Ohio-2523, we were faced with a situation where a prosecutor's closing argument repeatedly misstated and mischaracterized the evidence adduced at trial. Though we explicitly stated that such conduct could not be condoned, we held that the repeated misstatements did not constitute plain and prejudicial error due to the "overwhelming proof of guilt" in the matter. Id. at ¶41.

{¶ **71**} Such is not the case here. The state's case was built entirely upon circumstantial evidence and was heavily reliant upon the testimony of Jermaine Jefferson who initially lied to police about his presence at the scene of the crime. When Danielle Simpson did not testify consistent with the prosecutor's theory at trial, the prosecutor effectively substituted his own testimony for hers as to the incriminating statements allegedly made by appellant to Simpson. During closing arguments, the prosecutor, in two separate instances, relied on this alleged conversation as though it had been testified to by Simpson and was properly in evidence. The prosecutor explicitly implored the jury to rely on the statement as well.

{¶ **72**} "A hallmark of our system of criminal jurisprudence is that even those charged with despicable crimes are entitled to a fair trial. If we retreat from this proposition, we denigrate the fundamental proposition that our system is one of laws. And, while the prosecutor is permitted, even expected, to zealously seek conviction of those accused, there are limits applicable to prosecutorial trial practice." *State v. Willard*

(2001), 144 Ohio App.3d 767, 777, 761 N.E.2d 688, 695.

**{¶ 73}** In this case, as in *Willard*, the record reveals that the prosecution, "in an effort to secure an edge, crossed the line and the result is that defendant was deprived of a fair trial." Id. We conclude that in the context of the entire case, the prosecutor's misconduct constituted plain error and affected the substantial rights of appellant.

**{¶ 74}** Appellant's sixth assignment of error is sustained.

**{¶ 75}** In his seventh assignment of error, appellant argues that his due process right to a fair trial was violated when the state introduced testimony regarding appellant having been seen "in the past" with a revolver.

**{¶ 76}** No bullet shell casings were found at the crime scene, leading police to believe it was most likely a revolver that was used in the murder. At trial, the state introduced a revolver recovered from Carlton Tidmore, who denied being present at the scene the night of the shooting. Forensics were unable to make a determination as to whether the recovered revolver was the same gun as that used in Zagorski's shooting.

**{¶ 77}** Although not raised as a separate error, and not objected to at trial, we initially note that it is unclear why the gun recovered from Tidmore was admitted into evidence at all. Nothing in the record provides how Tidmore's gun was, in any sense, relevant to the present case. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Evid.R. 401. Forensics could not link Tidmore's revolver to this crime with any more certainty than any other revolver in the world. In fact, there is no evidence that the gun used in the shooting was a revolver. It was assumed to be the case due to the fact that no shell casings had been recovered. The sole connection between the gun used to shoot Zagorski and Tidmore's revolver was the tenuous link that it was believed, although there was no evidence to support the theory, that both weapons were revolver-style handguns. This link did not make Tidmore's revolver any more likely to be the murder weapon than any other revolver in existence. Tidmore himself denied any personal connection with appellant. There was no evidence linking Tidmore's revolver to appellant, nor did the state attempt to explain how the revolver, if it was the murder weapon, came to be in Tidmore's possession shortly after appellant allegedly used it in the present crime.

{¶ 78} Besides the unclear relevance of Tidmore's gun, no witness testified to having seen appellant possess a gun on the night of the shooting or at any other point in time contemporaneous with the shooting. However, Daquan Jackson testified that he had seen appellant with a black revolver at some unknown point "in the past." Appellant argues that such testimony violated Evid.R. 404(B)'s prohibition of other acts evidence.

{¶ 79} Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See, also, R.C. 2945.59.

{¶ 80} In regards to the admissibility of other-acts evidence involving a defendant having been previously seen in possession of a gun, the Ohio Supreme Court stated in *State v. Watson* (1971), 28 Ohio St.2d 15, 275 N.E.2d 153, that the, "'general rule of exclusion does not apply where the evidence of another crime is relevant and tends directly * * * to prove * * * [the] accused's guilt of the crime charged, or to connect him with it, or to prove some particular element or material fact in such crime; and evidence of other offenses may be received if relevant for any purpose other than to show mere propensity or disposition on [an] accused's part to commit the crime.'" Id. at 21, quoting 22A Corpus Juris Secundum (1962) Criminal Law, Section 683.

{¶ 81} "Stated another way, the rule is that 'except when it shows merely criminal disposition, * * * evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged.'" Id. at 21, quoting *People v. Peete* (1946), 28 Cal.2d 306, 314, 169 P.2d 924.

{¶ 82} We find the present case analogous to *State v. Crosby*, 186 Ohio App.3d 453, 2010-Ohio-1584, 928 N.E.2d 795. The gun used in the murder in *Crosby* was not recovered. Similarly, the gun recovered in the present case could not be tied to Zagorski's murder. In *Crosby*, the state introduced evidence of past instances of gun

possession by Crosby. However, none of the instances bore a relationship to the murder in that there was no testimony that Crosby was seen with a gun on or near the date of the offense. Such is the case here. Jackson's testimony that he had seen appellant in possession of a revolver "in the past" bears absolutely no relationship, whether temporal or logical, to the present shooting.

{¶ 83} There is no evidence that appellant possessed a revolver the night of our shooting nor at any point near the date of the offense. There is no evidence linking the gun that Jackson allegedly observed appellant to possess at some prior time to the gun recovered from Tidmore nor is there any evidence connecting Tidmore's gun to Zagorski's shooting.

{¶ 84} Without some link between appellant's alleged gun possession "in the past" and the present criminal act, the testimony regarding appellant's prior possession of a gun could have been used only for one purpose in this case and that was to prove that appellant acted in conformity with his implied reputation for carrying a firearm and that he was carrying a firearm the night of Zagorski's murder. This was an improper purpose for admitting other-acts evidence and the trial court's admission of such evidence was error. See *State v. Craig*, Cuyahoga App. No. 93137, 2010-Ohio-1857, at ¶31.

{¶ 85} Though the court erred in the admission of this other-acts evidence, appellant did not object at trial and in light of the other evidence discussed in our

sufficiency analysis, we cannot say that the outcome of the trial would have been different solely but for this improper admission.

{¶ 86} Appellant's seventh assignment of error is overruled.

{¶ 87} For ease of discussion we address appellant's ninth assignment of error out of order. Appellant argues in his ninth assignment of error that the cumulative effect of the errors addressed above deprived him of a fair trial.

{¶ 88} In *State v. DeMarco* (1987), 31 Ohio St.3d 191, 598 N.E.2d 1256, the Ohio Supreme Court recognized the doctrine of cumulative error. Pursuant to this doctrine, a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal. *State v. Baker*, Cuyahoga App. No. 95300, 2011-Ohio-2784, at ¶59, citing *State v. Garner* (1995), 74 Ohio St.3d 49, 656 N.E.2d 623.

{¶ 89} "In order to find 'cumulative error' present, we first must find that multiple errors were committed at trial. We then must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors." *State v. Djuric*, Cuyahoga App. No. 87745, 2007-Ohio-413, at ¶52. (Internal citations omitted.)

{¶ 90} To affirm in spite of multiple errors, we would have to determine that the cumulative effect of the errors is harmless beyond a reasonable doubt. *State v.*

*Williams*, Cuyahoga App. No. 94261, 2011-Ohio-591, at ¶25, citing *DeMarco* at 195, 509 N.E.2d 1256 (stating that the errors can be considered harmless if there is overwhelming evidence of guilt or other indicia that the errors did not contribute to the conviction).

{¶ 91} In this case, multiple errors were committed at trial. As previously discussed, the prosecutor elicited and the court allowed Jefferson to speculate as to events that were unquestionably established to be beyond his personal knowledge, the trial court allowed the introduction of the revolver recovered from Tidmore despite the fact that there was absolutely no evidence linking this particular revolver to this case and finally, and most importantly, as we addressed in appellant's seventh assignment of error, the trial court improperly admitted other-acts evidence that we concluded to be harmless by itself. However, in conjunction with these other errors and considering that the record does not contain overwhelming evidence of appellant's guilt, we find that the accumulation of these errors was unfairly prejudicial. There is a reasonable probability that, but for the above errors, the result of the proceeding would have been different. Therefore, we cannot say that the cumulative effect of the errors was harmless beyond a reasonable doubt.

{¶ 92} Appellant's second, seventh, and ninth assignments of error are sustained, rendering the eighth assignment of error moot. See App.R. 12(A)(1)(c).

{¶ 93} Accordingly, the judgment of the lower court is reversed and this matter is

remanded for a new trial.

Judgment reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN A. GALLAGHER, JUDGE

PATRICIA A. BLACKMON, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR

Appendix

*Assignment of Error No. 1*:
"Benjamin Williams's convictions are not supported by legally sufficient evidence as required by State and Federal Due Process."

*Assignment of Error No. 2*:
"Benjamin Williams's convictions are against the manifest weight of the evidence."

*Assignment of Error No. 3*:
"The trial court violated Benjamin Williams's Due Process right to a fair trial when it did not provide a meaningful response to jury questions and permitted a

conviction on a theory of criminal liability on which the jury was not instructed."

*Assignment of Error No. 4*:
"Benjamin Williams did not receive a fair trial as required by State and Federal Due Process because the jury failed to follow the trial court's jury instructions."

*Assignment of Error No. 5*:
"Benjamin Williams's convictions for aggravated murder and aggravated robbery violate due process because they are inconsistent with the not guilty verdicts within the same count on the firearm specifications."

*Assignment of Error No. 6*:
"Benjamin Williams was denied his Due Process right to a fair trial as a result of prosecutorial misconduct."

*Assignment of Error No. 7*:
"The trial court plainly erred and violated Williams's Due Process right to a fair trial in admitting testimony regarding Williams being seen 'in the past' with a gun similar to the murder weapon."

*Assignment of Error No. 8*:
"Benjamin Williams was denied effective assistance of counsel in violation of the Sixth and Fourteenth amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution. "

*Assignment of Error No. 9*:
"The cumulative errors committed in this case deprived Benjamin Williams of a fair trial."